addressed either by you or your opponent. With that, we'll call the first case of the day, United States v. America v. Li, and Mr. Kurt Wright, we'll hear from you. Good morning. May it please the Court. My name is Lance Kurt Wright, and I represent the appellate Hongyan Li. Your Honors, there are many issues raised in the briefs, all of which merit the Court's full attention, but the utterly decisive point in favor of Li is that the plea agreement entered into by the parties in this case precludes this civil denaturalization proceeding. I'd like to turn to that first. To determine whether the government's conduct in bringing this civil denaturalization proceeding violates the terms of the plea agreement, the Court must determine whether Li's interpretation of the plea agreement was reasonable. Since contractual principles apply to determining the definitions and meanings of the plea agreements, the Court should begin its analysis with the plain language of the plea agreement, which in this case provides that Li would not be subject to a subsequent prosecution in return for her plea of guilt and provide information about her criminal enterprise. And here, Li understood the words subsequent prosecution to include this civil denaturalization proceeding, and she was not unreasonable for doing so. In the briefs and at the district court level, the parties provided many different definitions of the word prosecution and prosecute. And all of those definitions, almost all of them, have a part of the definition which is broad enough to include a civil denaturalization proceeding. In general, it means prosecution is to carry out or to commence a legal action which is broad enough to include a civil denaturalization proceeding. This court does that when it dismisses a civil action for lack of prosecution. So Li's reasonable understanding is certainly reasonable that prosecution is included. How do you get around the language that says that the agreement does not prevent any government agency from pursuing civil or administrative actions against the defendant? That's right. It says no government agency can bring in any civil action. I agree with that. That's what it says. That's not what's happening here. Here it is the United States of America who is bringing this action. It's not an agency of the same. The government concedes this point in the first page of its complaint when it says that the plaintiff is the United States of America. And that's an important distinction, Your Honor, because if Congress wanted an agency to bring this action, it could have done so by statute, but it didn't. And there's examples of that. For example— What's the practical difference, though? Well, I think the practical difference is Li's understanding. Li reasonably understood no prosecution brought by the United States of America and she wanted to know—she would want to know what liability she would have in the future. So I think that it's a big difference. When the parties come into a contract— What different position would she be in if HHS or whatever other agency brought the action? Well, I think then that she would be not able to bring this argument under the plea agreement. I think that would be a significant— She wouldn't be able to make this argument in this case, but she'd still be here contending that she was not bound by the plea agreement. Well, she's saying she is bound by the plea agreement, Your Honor, and that the government's the one that's acting contrary to the plea agreement. Okay, let me—what difference does it make what she thought? Does that make a lot of difference, what she thought at the time that she entered the agreement? Absolutely, Judge. This Court's case law construing plea agreements says that in order to determine what the terms mean, you have to look at the reasonable understanding of the parties, and Lee's understanding was reasonable. The Supreme Court, in cases since 2001 in INS v. St. Cyr and Padilla v. Kentucky, realized and observed that immigrant defendants are acutely aware of the immigration consequences of pleading guilty to an offense. St. Cyr stated that explicitly. Well, has there been any kind of—no effort on her part to withdraw the plea of guilty as having been misled and not fully informed about the consequences of her plea? Not at this point, Judge, because she's still relying upon it being applied according to its terms. Okay. At this point, if you look at the— Well, at the time the plea was taken, did the magistrate or the district judge interrogate her or counsel with regard to the consequences of her plea and make any reference to the potentials? To my knowledge, Judge, there's no mention of a denaturalization proceeding, but he did— I'm sorry? To my knowledge, there's no advisers about the denaturalization proceeding in the record in the criminal case. He probably did give some general instructions about there could be immigration consequences. I think that's fair to assume so. However, I would note that since she was a U.S. citizen at the time, that would not have been the district court's point of emphasis as compared to where she was a lawful permanent resident, for example. He certainly would have gone into it there. But she was a United States citizen, and the denaturalization issue was not before the court at that point. So when Lee and her counsel got together and looked at the plea agreement drafted by the government, Lee came away from that meeting reasonably understanding that prosecution precluded this denaturalization proceeding, and she stated in her affidavit that she would not have agreed to it had it been otherwise. And so it comes back to the question, was her interpretation reasonable? And the word prosecution— You make no claim here that she received inadequate advice from the bench in taking the plea. I'm not making that claim. My claim is based solely on her reasonable interpretation of it, Your Honor. And I would note that the Department of Homeland Security, in their official memorandums, which they send to their civil immigration attorneys who conduct civil deportation proceedings, refers to their decision to implement a civil case as prosecutorial. In the motion to denaturalize her, what facts did the government allege in that motion to support the motion? The complaint alleged, Judge, that she was convicted of enticing prostitutes across straight lines and that she was involved in money laundering at the time when she naturalized. And those convictions show the government's opinion that she was involved in unlawful acts, which precluded her denaturalization. So did the government use anything other than her plea of conviction to base its motion to denaturalize on? They relied on the convictions, Your Honor. That's what I mean, on the conviction itself. Right. So is that relying on information that was furnished? They just relied on the conviction. Does that make a difference to your argument that they really did not rely on information that she was furnishing pursuant to the plea agreement? Well, first, there would be no conviction if there was no plea agreement, so I think that's important to note. Secondly, the parties in that plea agreement were the United States of America, the Western District of Texas, and Lee. That's the same parties here. So remember that we're using contractual principles. They are bound by that plea agreement, and so they are not allowed to use information to obtain that conviction against Lee today. And I think that if the court were to implement a rule that stated that the difference between the plea agreement and the conviction, that would have some unsettling consequences because defendants would say, well, are you really not going to use that information against me? Are you going to try to find a way to finesse yourself out of this plea agreement so you can denaturalize me later? I think that that would be a bridge too far. Furthermore, if there's any ambiguity in between how the court sees this plea agreement and the definition of prosecution, the courts are construed in favor of Lee. The government drafted the plea agreement. They could have entered information about a civil denaturalization proceeding had they desired to do so. They could have stated specifically in safeguard of their right, but they failed to do so. And notably, had they done so, Lee would not have entered into it. Furthermore, the government – the only parole evidence available is a letter from the prosecutor in which he assured Lee that any information she provided in a debrief session would not be used against her. And now in that letter, notably, they did not use the word prosecution or prosecute. It said directly used against her. Now in violation of that assurance, the government is using that information against her to denaturalize her. The government relies heavily on this court's case. All right. Now – so, okay. What is the relief you want? Dismissal. Dismissal of what? The denaturalization proceeding. Of the complaint. Of the complaint. There was a complaint. Is that what it was, a complaint to denaturalize or what? I believe it was a complaint, yes. And so you get a dismissal of this case and they turn around and they can turn around and do the same thing. I think it would be dismissal with prejudice, Judge. I think that the parties have entered this plea agreement. They reasonably – Well, no, but I mean they get the information from somewhere else, not the plea agreement. I mean they get the information from the very facts that she was engaged in prosecution, not her admission, but they've got witnesses to that effect. And they put on those witnesses, not relying on the plea agreement, and you're just right back where you started. Well, first the plea agreement has the facts they're relying upon in sight. That's what? So that's the only facts that have been submitted to the court regarding the – I understand that, but I mean they could – it just seems to me that the evidence is available from other sources as well and that they could denaturalize on grounds other than the plea agreement if they wanted to. We invite them to try, but I think due process of law, especially when we're talking about something as serious as taking someone's citizenship away, requires that to be – I mean there's no question, but she was engaged in prosecution. Nobody's challenging that – I mean prostitution. Nobody's challenging that, really. We're not challenging that. Well, I mean what prostitution is, but she was engaged in prostitution. I think that's an open question. She was convicted of engaging in prostitution across state lines, but – Well, that's not your strongest argument. Yeah, innocence is not your strongest argument. Well, I'll stick to the prosecution argument then, Judge. I think it would be appropriate to speak to the court about the case Bickham-Lincoln-Mercury v. the United States, which is relied upon heavily by the government. First, in Bickham, the court considered the word prosecute, not prosecution. In the government's brief, they found that distinction to be material, and if that's the case, then Bickham should not be applicable to Lee's plea agreement. In Bickham, the court found that the word prosecute did not preclude future civil liability for the defendant for two reasons. One, it said that typically prosecute refers to criminal matters, and second, the plea agreement in Bickham's case was silent on future civil liability. Well, as we discussed earlier with Judge Davis, the plea agreement in Lee's case is not silent on future civil liability, but rather it allows agencies of the United States to bring civil matters. I think that's a material difference between Lee's case and Bickham's case, because when the court decided Bickham, they did not want to infer what the parties might have meant about civil liability without any type of language in the plea agreement speaking to it. But here, the court does not need to infer or imply, because the parties did address it explicitly when they said the government agencies can bring it. And as noted, here it's not a government agency bringing the case. It is the United States of America. Furthermore, Bickham relied upon a definition of prosecute from 1990, which, as the briefs show, has changed substantially. And now the definition no longer refers only to criminal matters but is broad enough to include prosecution of civil matters. And Lee was not unreasonable to believe so. And again, that's the standard. Was Lee reasonable in her understanding of it? Lee, a layperson who is not trained in the nuances between civil actions and criminal prosecutions, was she reasonable in believing that the same facts and the same conduct which caused her to be convicted cannot be used again to make her leave? She was represented, wasn't she? She was. But still, I think Sierra v. Padilla are important in that point, Judge. Criminal – alien defendants really would want to know what are the consequences of her plea agreement. And it's reasonable that Lee, as an immigrant to the United States, would have wanted to know if she pled guilty to this offense, would it harm – take away her citizenship? And as her affidavit says, she thought it wouldn't. Well, the only point I'm making is she did have a lawyer to explain the plea agreement to her. She did. And Judge, the effectiveness of that counsel is not an issue in this case. But nevertheless, I think her reasonable understanding was informed by her counsel. And I think that the counsel, who I'm not sure what he knew about immigration law, who knows what his understanding of prosecution was? But again, the government could have made this clear in the plea agreement had they wanted to. All they needed to do was write one line. This does not affect our ability to implement a civil action to denaturalize you. Maybe she didn't have a lot of incentive to clarify it. I think she did, Judge. I think she wanted to stay here with – she testified with – at the time of taking the plea, if there was uncertainty about it, I think it could easily have been clarified. Well, I think from her perspective, she didn't think she needed to clarify it because she thought the language was clear and that it didn't – that it precluded the civil denaturalization proceeding. Okay, Mr. Cartwright. Thank you very kindly. Thank you, Judge. Mr. Nazaroff, from the Department of Justice, we're here for you. Good morning. Ari Nazaroff, on behalf of the United States Department of Justice, representing the Attorney General. The district court judge got it right in this case. He correctly found that the civil proceedings in this case did not violate petitioner's plea agreement or any statute of limitations. What did the district judge inform this person of when they took the plea agreement? Did they – this was anticipatable by lawyers, at least. Did anybody – did the judge bring this up, that this is the consequence of the plea? Or did it just stay in conclusory terms? Did you understand the terms of the plea agreement?  I can't right now point to the page, but having read the plea – I'm sorry? That was done in open court. I'd just like to also point out – Well, I understand what was done in open court. When the judge took the plea, he – I believe there's a transcript in the record where he asked her if she understood the plea agreement. I believe that he asked her if she understood the plea agreement in court. I can't point right now offhand to the criminal transcript where that was said. But she was represented. And I would like to also point out, Your Honor, this is the language. We'll look at that. I have not read that. But my concern was that normally just a judge taking a plea in these kinds of cases warns them about these collateral consequences. Taking a plea to a criminal conviction, that this may result in your deportation, for example. That's virtually required to do so. We've held that a plea agreement is not – I didn't understand. Well, we're not talking about that. We're talking about the understanding of the plea agreement, and nobody talks about what the district judge said. But you're telling me now that the district judge told her that? Well, I don't – You don't know. Remember, Your Honor, reading the portion where it specifically – Why don't you just refer us in a letter to the court today before you leave the courthouse where that may be found, where the transcript of the plea – of the allocution, the explanation of the plea agreement, and the entry of the plea agreement can be found? I believe it could be found in the record right now. Well, you don't have to – you can do it now if you want to, but your time is running on your argument. You want to use your argument time to do it. Page 158 to – Well, what does the judge say to the defendant about this matter? About collateral consequences? Yes. Well, she does not – it does not – the immigration consequences do not specifically, I believe – I say again, do you want to use your argument time to – No, Your Honor, I will provide a letter to the court. Okay. Could I have a couple of days to do that? Okay. Until Monday, care of business when I get back to DC. You might look and see whether our requirement that the judge make such a warning applies to someone who's a citizen or whether that applies only to someone who's not a citizen or at least hadn't completely been naturalized.  You might leave us a little note about that. Well, I would think that if the judge may not have known that she was naturalized. I don't believe so, Your Honor. Let me read to you very clearly what the plea agreement says. She was represented. There's been no allegations of ineffective assistance of counsel. She at no point has argued, oh, I didn't understand what was going on. This is clear on page 328 of the record. The agreement does not prevent any government agency from pursuing civil and or administrative actions against the defendant, the petitioner, or any property. The United States Department of Justice is a civil agency. She signed this plea agreement. There was nothing in the transcript before the district court judgment where she says she misunderstood the agreement. She has not alleged ineffective assistance of counsel in this case. And this is a red herring, Your Honor. The district court correctly found that the civil proceedings do not violate her plea agreement. And in fact, Your Honor, a lot of times in these criminal cases, when the U.S. attorneys bring it, bring the criminal action and it's someone who's been naturalized, they know that there is going to be a civil action coming, a denaturalization civil action coming. Even if they know it, though, that doesn't relieve the district court from the obligation to explain it in accepting their plea. But anyway, go ahead. Well, she understood the plea, Your Honor. And again, she was represented. And this language is very clear that a civil action is not for criminal. If the petitioner's argument is accepted, a criminal plea is a get-out-of-all-related litigation card. Everyone is going to argue at this point that they didn't understand the plea. That's not what they understood, even though the language is very clear in the plea agreement. And that's how they're going to – that gives a door for everyone to get out of any kind of subsequent action. Your Honor, can you clarify to me what in this letter you would like to see that you just brought up? All I want is the reference in the record where we would find the plea or we would find the colloquy between the judge and her in accepting the plea agreement. I'm interested in whether the judge, any indication the judge knew anything about anything other than that she was a citizen, whether she was naturalized or whether she was born here. Did he have any hint how she became a citizen? Well, Your Honor, I'm not sure that that would be in the report. In the pre-sentence report, when you brought your letter, look to see if that description or narrative or story about coming here and so on and so forth, it's in the narrative of the pre-sentence report. I agree completely with Judge Davis that if you're just an ordinary citizen that there's no necessity of that. All I'm asking is what might be there. But look in the pre-sentence report, because I would think that given her kind of life story and her assertions about dependents going into prostitution, et cetera, to support herself, that that maybe will be in the sentencing materials, et cetera, et cetera. I don't know. I'm responding to your question about what you need. I'd just like to point out that a petitioner has not pointed out how the district court decision is in error in any way. All he says she misunderstood the clear language of the plea. Yes, but it would be. If the district court explicitly said to her, you understand that you're a naturalized citizen, and this can have consequences with respect to your naturalization, then that would nail it down for you. And it would cut the props out from her argument that she didn't understand. That's all. Move on with your argument. Go ahead. Well, as I indicated at the beginning, the district court judge made the correct decision as far as the fact that the plea agreement does not – the petitioner's plea agreement has not been violated, although the statute of limitations imposed by Congress, as the petitioner has argued. And the petitioner did not possess good moral character and was therefore ineligible to naturalize due to her criminal conviction for prostitution, arraignment, and orchestrating money laundering – orchestrating a prostitution and money laundering. If there are no further questions from the bench, we are going to rest and agree. Okay, well, thank you very much, Mr. Nazaroff. That's good. We certainly have that. You've waived no arguments in your brief. Mr. Cartwright, we'll hear from you. Thank you, Your Honor. I think that it's important to recall that in entering the plea agreement, Lee pled guilty as was required of her. She went to jail. She gave up all the money that she earned through her legal operation, and she had her property forfeit. She gave up all the money that she had earned in the prostitution operation. My clock's not moving, Judge. Sorry? My clock isn't moving. I'm sorry. Yeah, she gave up all of her information. She gave it all up. My point is, she should have done that. Pam, there are no lights on this. Sorry, Judge. There you go. As she should have done, and as she was required to do under the plea agreement. But that was the agreement crafted between her and the United States. And now the United States, in violation of that agreement, is prosecuting her further for the same exact conduct which she was convicted for. I think she complied with the agreement, and that the agreement should be enforced by this court, which requires dismissal of this lawsuit. Thank you, Your Honor. Thank you, Justice. Okay. Thank you, Mr. Cartwright.